Beverly **DORN**, Respondent,

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellant.**

No. C3–86–250.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Review Granted Oct. 22, 1986.

Douglas E. Schmidt, Grose, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, for respondent.

Michael S. Kreidler, Lasely, Gaughan, Stich & Angell, P.A., Minneapolis, for appellant.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Beverly Dorn and her daughter, Wanda Lucius, were injured in an automobile collision with an uninsured driver. Lucius received the maximum uninsured motorist benefits provided under her policy with appellant, Liberty Mutual Fire Insurance Company (Liberty Mutual.) Dorn then received an arbitration award of $60,000 for uninsured benefits under the same policy. Liberty Mutual refused to pay on the basis that the policy limits were exhausted in the Lucius settlement. The trial court declared that the policy was ambiguous and violated Minn. Stat. § 65B.49, subd. 4(1) (1978). It ordered judgment for Dorn in the amount of $60,000. Liberty Mutual appeals. We affirm as modified.

## FACTS

Dorn, a passenger in an automobile driven by her daughter, Wanda Lucius, was injured in a collision with an uninsured driver. Lucius had two automobiles insured by Liberty Mutual. The policy's declarations sheet provided a single limit of $60,000 uninsured motorist coverage for "Ea. Person/Ea. Accident." The following provision is included in the part of the policy describing uninsured motorist coverage:

> The insurance afforded under the Uninsured Motorists Coverage applied separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the applicable limit of the company's liability.

Wanda Lucius, also injured, made an uninsured motorist claim and Liberty Mutual paid her $120,000, stacking coverage.

Dorn as an occupant of an insured automobile claimed uninsured motorist benefits under the Liberty Mutual policy. An arbitrator awarded Dorn $60,000. Liberty Mutual refused to pay the award, claiming the policy limits were exhausted in satisfying Wanda Lucius' claim. Dorn brought this declaratory judgment action and the trial

court ordered Liberty Mutual to pay Dorn $60,000.

## ISSUE

Is the insurance policy ambiguous or does it conflict with Minn.Stat. § 65B.49, subd. 4(1) (1978)?

## ANALYSIS

The trial court found the policy language describing uninsured motorist coverage ambiguous because the declarations sheet "would appear to indicate that there is a $60,000 fund available for Mrs. Dorn and $60,000 for Wanda Lucius" which conflicted with policy language that appeared to limit coverage to $60,000 for all persons injured in the same accident.

■ We do not think the policy language is ambiguous. The phrase "Ea. Person/Ea. Accident" is standard policy language generally used in describing a policy with split limits; the limit for "each person" sets the limit of liability for all damages from bodily injuries to one person as a result of one accident. The second limit for "each accident" sets the total limit of liability for all damages sustained by two or more persons as a result of injuries in one accident. A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 12.3 at 379 (2d ed. 1985).

The policy had a single limit of $60,000 which Dorn believes applies to each person injured in each accident. This construction is unreasonable. If that were the case, there would be no ascertainable policy limit because the limit would depend entirely on the number of persons covered. The policy language, though not a model of clarity, states that the "inclusion herein of more than one insured shall not operate to increase the applicable limit of the company's liability." We think the policy unambiguously provided a total liability limit of $60,000 per accident.

1. In 1985 the legislature amended subdivision 4 to read:

The coverages combined, at a minimum, must provide limits of $25,000 because of injury to

The trial court also concluded that the single $60,000 limit conflicts with Minn. Stat. § 65B.49, subd. 4(1) (1978). The statute provides:

No plan of reparation security may be renewed, delivered or issued * * * unless coverage is provided therein or supplemental thereto, in the amounts of *$25,-000* because of injury to or the death of *one person* in any accident, *and subject to the said limit for one person, $50,000* because of bodily injury to or the death of *two or more persons* in any accident * * *.

*Id.* (emphasis added).

The Liberty Mutual policy does not conflict with the statute as literally read, because it provides a total of $60,000 coverage, (a figure in excess of the $50,000 statutory minimum requirement) regardless of the number of people injured. But that does not end the matter. The issue is whether the legislature, in requiring higher limits when two persons are injured in any accident, meant to preclude insurers from exhausting the higher policy limits in a settlement with one of the insured persons. This conflict arises when a carrier attempts to fit a single-limit policy into the split-limit statutory scheme.

The statute differentiates the limits depending on the number of people injured. If one person is injured, the lower limit applies. If two or more persons are injured, the higher limit applies. There would be no reason to differentiate the limits this way if the legislature intended that a single insured could collect the total policy limits and thereby preclude all others from recovery.

Minn. Stat. § 65B.49, subd. 4(1) (1978) requires a minimum coverage of $25,000 per person and $50,000 per accident, with a maximum to one person on the single person limit provided by the policy. The 1985 amendment of subdivision 4 merely clarifies rather than changes subdivision 4.[1]

or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident. *In the case of injury to, or the death of, two or*

The amendment specifies that the amount available to any one person must not exceed the coverage limit provided for one person in any one accident.

The coverage limit for one person is $60,000. Liberty could properly pay that amount to Lucius. However, by virtue of the statutory language "subject to the said limit for one person," it must also compensate the remaining injured or deceased persons eligible to recover under the policy. What amount should that be? The $25,000 minimum statutory amount or some other amount consistent with the intent of the legislature and with the policy language?

■■■ We conclude Liberty has to pay the policy limits of $60,000 to Dorn. The statutory language not only imposes minimum limits of coverage but also requires the residual amount of coverage, after payment to one individual, to be in the *same amount* as that offered the first person which here is $60,000. Thus, although the policy language does not initially conflict with the statute, its application here, that is, full payment to the first claimant, Lucius, did create a conflict which must be resolved for Dorn in compliance with what we construe to be the legislative intent.

## DECISION

The trial court correctly determined that the Liberty Mutual policy provides $60,000 of coverage for Dorn's claim. Minn.Stat. § 65B.49, subd. 4(1) (1978) precludes exhaustion of the total policy limits in a settlement with one insured when two or more persons are injured.

Affirmed as modified.

LANSING, J., dissents.

LANSING, Judge (dissenting).

The parties submitted this case to the trial court on stipulated facts. The accident occurred on June 19, 1978. Wanda Lucius submitted her claim for uninsured benefits, and on May 21, 1982, Liberty Mutual paid her $120,000, the policy limits when the coverage for the two insured automobiles was stacked.

Not until March 27, 1984, did Beverly Dorn notify Liberty Mutual that she intended to present a claim for uninsured motorist benefits. The parties stipulated for purposes of this action that Liberty Mutual's settlement with Lucius was reasonable and provident.

I agree with the majority that this policy is not ambiguous, but I disagree that it conflicts with Minn.Stat. § 65B.49, subd. 4(1). The issue is whether the statute, in defining minimum coverage with a split-limit scheme, precludes the use of single-limit policies that provide at least $50,000 of coverage.

Single-limit policies offer significant advantages to both insured and insurer. *See* M. Woodroof, J. Fonseca & A. Squillante, *Automobile Insurance and No-Fault Law* § 10:5 at 270 (1974). These policies permit greater flexibility in dividing the policy limits if, for example, only one person is injured, or if one insured is injured much more seriously than others. Given such benefits and the absence of an express conflict between the statute and the policy, I do not believe the statute mandates split-limit coverage.

This does not mean that an insurer is permitted to exhaust the policy limits in an irresponsible manner. When there are multiple claimants to a limited fund, proration of the funds may be required. *See Manieri v. Horace Mann Mutual Insurance Co.*, 350 So.2d 1247, 1248 (La.App. 1977) (proration of uninsured motorist benefits might be required after all claims were presented and suits consolidated, if

---

more persons in any accident, the amount available to any one person must not exceed the coverage limit provided for injury to, or the death of, one person in any accident. For purposes of this subdivision, uninsured motorist coverage and underinsured motorist coverage shall be single coverage.

(Emphasis added). 1985 Minn.Laws ch. 168, § 11 (effective July 1, 1985) (now codified at Minn.Stat. § 65B.49, subd. 3a(1) (1984 & Supp. 1985)).

settlement had not achieved substantial proration); *cf. Hale v. State Farm Mutual Insurance Co.*, 225 Tenn. 620, 474 S.W.2d 905 (1971) (proration not required when plaintiff waited until after policy limits were exhausted to file claim for uninsured benefits). In addition, an insurer may not in bad faith exhaust the policy limits by settling with certain claimants to the exclusion of others. *See* 8C J. Appleman & J. Appleman, *Insurance Law and Practice* § 5108 at 562, 563 (1981).

Dorn waited two years after the settlement with Lucius to assert her claim. She stipulated that the settlement was reasonable and provident. Under these circumstances, Liberty Mutual has fulfilled its contractual obligation to provide coverage by paying the policy limits to Lucius. I would reverse the trial court.